[Civ. No. 4036.  Second Appellate District, Division Two.—April 12, 1923.]

## DORA G. CRAWFORD, Appellant, REX D. DUNCAN, Respondent.

[1] PHYSICIANS AND SURGEONS — BREACH OF ORAL CONTRACT — PERMANENCY OF SCARS FROM RADIUM TREATMENTS—STATUTE OF LIMITATIONS.—An action against a physician to recover damages resulting from the breach of an oral contract whereby defendant warranted that his radium treatments of plaintiff would not leave a permanent scar is not an action for malpractice based upon negligence, but is one for the breach of an alleged oral agreement, and the statute of limitations which is applicable thereto is subdivision 1 of section 339 of the Code of Civil Procedure and not subdivision 3 of section 340.

[2] NONSUIT—CONSIDERATION OF EVIDENCE.—On a motion for nonsuit that view of the evidence must be taken which is most favorable

1. Action for malpractice as based on contract or tort, note, **Ann. Cas.** 1912D, 866.

to the plaintiff and not only must all the evidence in favor of the plaintiff be taken as true, and all contradictory evidence, if any has been given, be disregarded, but if either of several inferences may reasonably be made, that one must be adopted which is the most favorable to the plaintiff.

[3] ID.—EXISTENCE OF CONTRACT—TIME OF ACCRUAL OF CAUSE OF ACTION—EVIDENCE—QUESTIONS FOR JURY.—In this action against a physician to recover damages resulting from the breach of an alleged oral contract whereby defendant warranted that his radium treatments for swollen glands on plaintiff's neck would not leave a permanent scar and that any scar which might result would disappear within a reasonable time, the evidence adduced by plaintiff was sufficient to make out a case for the jury, both as to the existence of the oral contract of warranty and the accrual of the cause of action within the two-year period.

[4] STATUTE OF LIMITATIONS—BREACH OF CONTRACT—COMMENCEMENT OF RUNNING OF STATUTE.—In all personal actions for the violation of an express or implied contract the statute of limitations begins to run from the date of the breach of the contract and not from the date of damages caused by it.

[5] WARRANTY—FUTURE EVENT—STATUTE OF LIMITATIONS.—Where a warranty relates to a future event by which it will be ascertained whether it will be breached or not, no breach occurs, and consequently no cause of action accrues, until the happening of such future event.

[6] ID. — EFFECT OF RADIUM TREATMENTS — ABSENCE OF PERMANENT SCAR—WARRANTY OF PHYSICIAN—RUNNING OF STATUTE OF LIMITATIONS.—Where a physician warranted that his radium treatments for swollen glands on a patient's neck would leave no permanent scar and that any scar which might result would disappear within a reasonable time, the warranty related to a future event and was broken when a reasonable person, circumstanced in all respects as the patient was, would know with a reasonable degree of certainty that a permanent scar had developed as a result of the treatments, and the statute of limitations would begin to run from such time.

[7] PHYSICIANS AND SURGEONS — BREACH OF ORAL CONTRACT — WARRANTY AGAINST PERMANENT SCAR FROM RADIUM TREATMENTS—EXPIRATION OF REASONABLE TIME—QUESTION FOR JURY.—In an action against a physician to recover damages resulting from the breach of an oral contract whereby defendant warranted that his radium treatments of plaintiff would not leave a permanent scar and that any scar which resulted would disappear within a reasonable time, the question whether such reasonable time as was contemplated by the warranty had elapsed more than two years before the commencement of the action was one for the jury.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Monroe, Judge. Reversed.

The facts are stated in the opinion of the court.

John L. Richardson, T. E. Parke and Anderson & Anderson for Appellant.

W. H. Dehm for Respondent.

FINLAYSON, P. J.—This is an action against a physician to recover damages resulting from the breach of an oral contract whereby he warranted that his radium treatments of plaintiff would not leave a permanent scar on her neck. Defendant pleaded the statute of limitations, averring that the action was barred by subdivision 3 of section 340 of the Code of Civil Procedure and by subdivision 1 of section 339 of that code. The latter section, in subdivision 1, provides in substance that an action upon an oral contract is barred in two years. At the close of her evidence plaintiff was nonsuited upon the ground that the statute of limitations had run. Judgment for defendant was entered accordingly, and from that judgment plaintiff appeals.

The complaint alleges in substance that in 1917 defendant, who was consulted by plaintiff with reference to swollen glands on the right side of her neck, undertook to treat the swelling with radium, at the same time orally agreeing and warranting that no permanent scar of any kind would result from the treatment; that any scar which might result would disappear within a reasonable time; and that a reasonable time for its disappearance would probably be a year or possibly a year or two from the date of treatment; that plaintiff, relying upon such warranty, submitted herself to defendant's radium treatments, with the result that a large and disfiguring scar was left upon her neck; that a reasonable time for its disappearance having elapsed, the scar has proved to be permanent, and has caused plaintiff great humiliation. Wherefore she alleges that she has suffered damages, for which judgment is prayed.

The action was commenced July 8, 1920, which was more than two years after the termination of the treatments but

less than two years from the expiration of the time within which, as plaintiff claims, it was to be ascertained whether the disfigurement would prove to be permanent or merely transitory.

[1] This is not an action of tort. That is, it is not an action for malpractice based upon negligence. It is an action for the breach of an alleged oral agreement whereby defendant warranted that his radium treatments would not leave a permanent scar. It is subdivision 1 of section 339 of the Code of Civil Procedure, therefore, and not subdivision 3 of section 340 of that code, which is applicable; and the statute of limitations did not run until the expiration of two years from the time when plaintiff's cause of action accrued.

[2] On a motion for nonsuit that view of the evidence must be taken which is most favorable to the plaintiff. Not only must all the evidence in favor of the plaintiff be taken as true, and all contradictory evidence, if any has been given, be disregarded, but if either of several inferences may reasonably be made, that one must be adopted which is the most favorable to the plaintiff.

[3] The evidence adduced by appellant, considered, as it must be, in the light most favorable to her, was sufficient to make out a case for the jury, both as to the existence of the oral contract of warranty and the accrual of the cause of action within the two-year period. Upon the issue respecting the existence of the contract there was not only the testimony of the appellant herself, but likewise that of one of her witnesses—a woman who accompanied her to respondent's office on the occasion of the first conversation respecting the treatments, and who testified unequivocally that upon that occasion "Doctor Duncan gave the absolute promise that the treatments would not scar her neck."

The only serious question in the case is that which is concerned with the time when appellant's cause of action accrued and the statute of limitations commenced to run. [4] The general rule undoubtedly is that in all personal actions for the violation of an express or implied contract the statute begins to run from the date of the wrong—the breach of the contract—and not from the date of the damages caused by it. The question therefore is: When was the contract of warranty broken? [5] Where a warranty

relates to a future event by which it will be ascertained
whether it will be breached or not, no breach occurs, and
consequently no cause of action accrues, until the happening
of such future event. Thus, where a seller warrants that
fruit trees will bear a certain kind of fruit, or that a car-
pet when laid will not develop grease spots, the warranty
is breached and the statute commences to run only when the
trees begin to bear fruit or the spots develop in the carpet.
(*Allen* v. *Todd,* 6 Lans. (N. Y.) 222; *Ingalls* v. *Angell,* 76
Wash. 692 [137 Pac. 309]; *Firth* v. *Richter,* 49 Cal. App.
545 [196 Pac. 277]; *Carpet Co.* v. *Dornan,* 64 Mo. App.
17.) [6] So here, the warranty related to a future event
—the possible future development of a permanent scar; and
the contract of warranty was broken when a reasonable per-
son, circumstanced in all respects as appellant was, and who
had received such warranty as was given here, could know
with a reasonable degree of certainty that a permanent scar
had developed as a result of the treatments.

Before consulting Doctor Duncan appellant had sought
the advice of a Doctor Smith, who sent her to respondent.
She testified as follows concerning her first conversation
with respondent: "I said that I wanted him to look at my
neck, that I had a small swelling in the right side of my
neck. Doctor Smith had taken it up with him and had in-
formed me that Doctor Duncan was very successful in treat-
ing small swellings and glands of that description without
leaving a scar of any kind. I told him that; and Doctor
Duncan looked at my neck and said yes, that he had been
very successful in treating glands of that kind without leav-
ing a scar of any kind—that that was what they used radium
for so there would not be any scars, and in fact that they
used radium to eliminate scars. He explained as he went
on that they removed birthmarks with radium, and at that
time he . . . was treating a small child who had fallen in
a bonfire; he was treating it successfully with radium to
remove all these shriveling effects that the burn had left on
the child's face and bringing it back to the natural shape.
. . . I . . . told him that Doctor Smith had thought that
I should be operated upon, but the doctor [Smith] had told
me that he didn't want to operate upon my neck because
by operating upon it it would leave a knife scar, and rather
than leave a knife scar on my neck, because he knew I had

gone out socially, that he would rather turn my case over to Doctor Duncan and not have a scar on my neck. That is what I told Doctor Duncan. Doctor Duncan told me yes, that he was very successful in operating upon these cases without leaving a scar. He brought out pictures in a book that showed cases that he had treated of goiters where it would show quite a large goiter and that it was successfully removed by radium without leaving a scar of any kind. He showed me a picture . ₁ . of a gentleman who had been operated upon . . . with a knife operation, leaving, as he termed it, shriveled in scars, where after it was treated with radium left the skin absolutely clear and free from any scar of any kind. . . . He said aside from the little kernel that might be in my neck, that I would never know that my neck had been operated upon; and, of course, I asked him if I would suffer any inconvenience from this treatment, and he said no, none whatever; that after the radium had been applied my neck would get just like a sunburn, he said, just as if I had gone to the beach and gotten my neck sunburned, and, of course, that I would have to give that time to pass away, and when it did that my neck would resume its natural shade and be free from any mark whatever; and he says, 'I am going to say that aside from a little kernel that you will feel for the time, you will never know that your neck has ever been operated upon.' I said to him at that time, 'Well, . . . I know I won't be scarred with radium.' And he says, 'That I do know; that is why we use radium, so there will be no scar.' And I said to him, 'Well, I think I might just as well take the chance with radium. Then if it does not do the work and does not relieve the gland, I can then be relieved by the surgical operation.' "

Throughout the treatments, and even after they had ceased, respondent frequently assured appellant that any disfigurement which might result from his use of the radium would disappear with the lapse of time. It may be that nothing which was said by the parties after the termination of the treatments could alter the terms of the contract of warranty which had been made in the course of their first conversation; but statements made by respondent in subsequent conversations may be considered in so far as they throw light upon the original understanding and intention

of the parties. Such subsequent conversations are in some respects interpretative of the original undertaking.

It is a fair inference from all of the conversations of the parties that it was their understanding of the warranty that a year, or possibly two years, should be allowed to elapse after the cessation of the treatments before it would be advisable to decide definitely whether appellant's neck was permanently scarred. The treatments commenced in the latter part of May or the early part of June of 1917, and ceased about the first of the following month of September. When they came to an end appellant had a deep running sore on her neck, caused by the treatments. When she paid respondent his fee on October 1, 1917, he said to her: "Mrs. Crawford, you don't need to worry; your neck is going to be all right. It might take a year or so for that neck to heal, but don't worry; just give it time." And when the last treatment was given, about September 1, 1917, respondent told appellant that her neck would become "normal" if she "gave it time to heal."

It does not appear when the running sore on appellant's neck healed. Respondent, assuming that it had completely healed more than two years before the action was commenced, and further assuming that appellant necessarily must have been aware as soon as the sore healed that her neck was permanently scarred, earnestly insists that the cause of action must have arisen more than two years before the suit was brought. But appellant, who presumably had no more knowledge of such matters than the ordinary layman possesses, and who had entrusted herself to respondent's care, doubtless deferred to the doctor's judgment based on his years of professional experience in the use of radium as a therapeutic agent. She was justified in assuming that his judgment on such matters was probably correct, if not infallible. There is justification for the inference that the contract which respondent led appellant to understand was the measure of her rights and of his obligations was a contract to the effect that if a scar made its appearance time should be allowed to pass in order to ascertain whether or not it was to be a permanent disfigurement. He told her that if she would give her neck time to heal it "would absolutely become normal"; also that "when the blood supply came back to the scar tissue" the neck "would

resume its normal shade; that. the flesh then would be . . . normal.'' She was justified in relying upon these repeated assurances of her professional adviser.

[7] Whether such reasonable time as was contemplated by the warranty had elapsed more than two years before the commencement of the action was a question which should have been submitted to the jury, guided by proper instructions from the court.

Our conclusion is that the nonsuit was improperly granted and that the judgment should be reversed. It is so ordered.

Works, J., and Craig, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 2, 1923.