[Civ. No. 6016. First Appellate District, Division One.—December 20, 1927.]

EUSTACE CULLINAN et al., Respondents, v. R. McCOLGAN, as Surviving Partner, etc., Appellant.

688

Keyes & Erskine for Appellant.

John L. McNab for Respondents.

CAMPBELL, J., *pro tem.*—Plaintiffs, engaged in the practice of law, sued defendant Reginald McColgan, as surviving member of a copartnership of which his deceased brother, Daniel A. McColgan, was the other member, for the reasonable value of professional services rendered by plaintiffs to the copartnership. The action was commenced August 19, 1922. The copartnership is admitted by the pleadings and so is the fact that it was engaged in a general loan and brokerage business. It is also admitted that the copartnership business was done under the names of both partners and also of each partner.

In the first count of their third amended complaint plaintiffs allege that the partners, within two years immediately preceding the commencement of the action, became indebted to plaintiffs for services rendered, and that the reasonable value of such services so rendered within the two-year period was $28,525. In a second count of their third amended complaint plaintiffs alleged that within four years immediately preceding the commencement of the action the two McColgans, as copartners, became indebted to plaintiffs in the sum of $38,418.39, balance upon a book account for services and moneys advanced. A third count alleged that the McColgans as copartners became indebted to plaintiffs within four years immediately preceding the

action on a balance due of $38,418.39 upon a mutual, open, and current account for services rendered and money advanced. In a fourth count it is alleged that the defendant, as surviving partner, is indebted to the plaintiffs in the sum of $38,418.39 for services rendered and moneys advanced by ·plaintiffs to the copartners at their special instance and request. The fifth count asserts that on or about February 28, 1920, an account was stated between plaintiffs and the copartners by which it was agreed that a balance of $508.39 was owing for moneys advanced. A sixth count alleges that the copartnership and Reginald McColgan, as surviving partner, are indebted to plaintiffs in the sum of $37,910, a balance owing on account of services; that the copartners agree to pay the reasonable value of the services and that the reasonable value was and is $41,560, of which $3,650 had been paid, leaving a balance unpaid of $37,910 on account of services. Each count is supported by the customary averments. The death of Daniel A. McColgan is alleged and admitted in the answer to have occurred May 12, 1921.

In support of their complaint plaintiffs filed an "amended and further bill of particulars." In this bill of particulars plaintiffs recited the services rendered and that such services were rendered for and at the request of the McColgan partnership, and set forth the moneys advanced, the payments on account, the facts concerning their claim, and the charge they made for each separate piece of work. There is a summary and recapitulation in the bill of particulars in which plaintiffs separately list the services completed within two years prior to the filing of the complaint and the services completed within four but not within two years prior to that date.

The bill of particulars, besides being filed, was introduced in evidence as Plaintiff's Exhibit No. 118, and Mr. Cullinan testified to its correctness.

Reginald McColgan filed a verified answer to the third amended complaint, in which he admitted being the surviving member of the copartnership, but, by appropriate allegations, denied the indebtedness either for services rendered or money advanced, and denied that the services were rendered at the instance or request of the copartners, or either of them, denied any promise to pay, denied that

the services were worth the amounts alleged or any other amount, denied that plaintiffs had advanced any money for the use or benefit of the copartners, and pleaded the statute of limitations as against each count of the third amended complaint. In addition, the defendant set up a cross-complaint in which he charged plaintiffs with having caused the copartners a loss of $6,278 by reason of their negligence as attorneys for the copartnership in failing to have the summons served on one William L. McGuire in an action which the copartners commenced against Mc-Guire. To this cross-complaint plaintiffs filed an answer, denying negligence on their part or damage to defendants, alleging that Daniel A. McColgan and Reginald McColgan had expressly instructed them not to have the summons served in that matter and not to proceed further therein; defendant, however, offered no evidence in support of his cross-complaint and judgment of nonsuit was entered thereon.

The case was tried before a jury, which rendered a verdict in favor of plaintiffs for $10,835.19.

At the trial counsel for plaintiffs announced that plaintiffs had come to the conclusion that their books, as kept, did not constitute what the law defines as an open book account or an open, mutual, and current account, and that, in view of the plea by defendant of the statute of limitations, the plaintiffs wished to withdraw from the consideration of the jury their claim for services in any matter in which the services were not completed within two years prior to the commencement of the action. Plaintiffs also notified the court at the time that by reason of errors respecting dates they had included in group 1 (the two-year group) in the bill of particulars certain matters which ought properly to have been placed in group 2 (the four-year group). As a result of those adjustments plaintiffs' claim was reduced to $26,955.69, of which $508.39 was a balance on an account stated for moneys advanced, and the remainder was the reasonable value of services alleged by plaintiffs to have been completed within two years.

At the trial evidence was introduced of services rendered and completed more than two years prior to the commencement of the action for the limited purpose of showing that such services were of a reasonable value in excess of a

sum of $3,650, which was paid to plaintiffs by the Mc-Colgans at various dates between October 12, 1917, and July 31, 1920, and by plaintiffs applied in payment for services then earliest in time of completion and not at that time outlawed.

The record contains a stipulation that the examination of jurors and the exhibits may be omitted from the record, "and that appellant has waived the right on appeal herein to raise the point that the evidence is not sufficient to justify the verdict or judgment, or to raise any points other than those stated in the letter of Herbert W. Erskine to Eustace Cullinan, dated June 5, 1925."

Appellant has raised no points on this appeal that were not stated in the letter of his attorney, dated June 5, 1925, and it is admitted that the evidence is sufficient to justify the verdict or judgment.

This limits the points urged for a reversal of the judgment to two general objections, one, that recovery for some of the services presented to the jury was barred by the statute of limitations and, two, erroneous rulings of the court.

As to the first point, it may be said that on motion of plaintiffs the court withdrew from the consideration of the jury all services which they deemed might come within the bar of the statute, and the court specifically so instructed the jury. In instruction XVI the jury was told that "counsel for the plaintiffs, believing that the account which had been kept was not sufficient to meet the requirements of the law with reference to being either a book account or an open, mutual and current account, has not presented the matter from that angle, so that that particular count of the complaint cannot be considered by you in fixing the amount of your verdict. You can consider the items set forth in the count in the complaint which claims that the reasonable value of the services is the total amount that was set forth in the bill, deducting from that amount the amount stated in group 2, and being barred by the statute of limitations, and I understand that in this substituted group, Mr. McNab, that you have included the case of *King* v. *Crabtree, Huster* v. *McColgan, Courtney* v. *Kettler,* all of which appear in group 1 of the original. Mr. NcNab: We have conceded, if your Honor please,

that they are barred by the statute of limitations. The Court: So you are not to consider in determining the amount of your verdict anything as being recoverable by the plaintiffs in the action in excess of the amount stated on this summary here before you, to-wit: $26,955.69, of which a portion of that, the sum of $508.39, is contained in one other count of the complaint as being on an account stated." And in instruction XXXIV the jury was instructed "that the plea of the statute of limitations is a legal plea as against every claim of the plaintiffs that is barred by the statute of limitations," and in instruction XXXV: "You are instructed that the plaintiffs cannot recover for any services they claim to have rendered, and which services were completed more than two years prior to the date on which this action was commenced. This action was commenced on the 19th day of August, 1922." In other words, the court withdrew from the consideration of the jury all services that the plaintiffs performed which were completed more than two years before the commencement of the action, and, further, at the request of defendant, instructed the jury specially that of the remaining services which plaintiffs claimed were not barred by the statute, the plaintiffs could not recover for any the jury might find to have been completed more than two years before the suit was filed. The facts concerning the time when the services were performed were presented to the jury, and we may assume that in arriving at the verdict awarding plaintiffs $10,835.19 the jury excluded from its consideration any services that were completed more than two years prior to the commencement of the action. ■

Where the facts are agreed upon or ascertained, it is a question of law whether a demand is barred by the statute of limitations (*Reed* v. *Swift,* 45 Cal. 255; *Towle* v. *Sweeney,* 2 Cal. App. 29 [83 Pac. 74]), but where issue is joined on a plea of the statute and the evidence is conflicting as to when, with reference to the filing of the complaint, a cause of action accrued, the question is properly submitted to the jury as a mixed question of law and fact (*Pacific Improvement Co.* v. *Maxwell,* 26 Cal. App. 265 [146 Pac. 900]; *Towle* v. *Sweeney, supra; Crawford* v. *Duncan,* 61 Cal. App. 647 [215 Pac. 573]), and the case may not be taken from the jury where the plea of the statute is inter-

posed and there is evidence to support the plea (*Heilbron* v. *Heinlen*, 72 Cal. 376 [14 Pac. 24]). Appellant does not contend that the claims for all the services submitted to the jury were barred, and we must, therefore, conclude that the amount of the verdict represented the reasonable value of the services which the jury found not to have been barred by the statute.

Appellant contends that in *In re Miles Baird* there were, among other services, four actions in which the services were performed in 1917 or earlier, and on the theory that each of these was a complete proceeding, the claim for compensation for services in these matters was barred. The court's instructions concerning the statute of limitations were so clear and definite that, if any services rendered in the Baird matter were barred, the jury must be supposed not to have included compensation for them in the verdict. But there is evidence that none of the services in the Baird matter were in fact completed prior to the two years' period. These four matters were incidental to the main objective of the Baird litigation, so far as the McColgans were concerned, namely, to establish Daniel A. McColgan's title to Miles T. Baird's interest in the David J. Baird estate, and none of these matters had terminated by the end of 1920, when plaintiffs ceased to represent defendant and his brother in them. The plaintiff Eustace Cullinan testified on this question as follows: "Mr. McColgan brought me the three complaints and the temporary restraining order and the preliminary restraining order and the writ which has been introduced, and in the course of the conference with him, he told me the story of the Baird case and his relations with Mr. Baird and the relation of his client, Williams, with Mr. Baird, and he told me he wanted Cullinan & Hickey to represent his interests and the interests of his firm, and incidentally the interest of R. C. Farley, F. W. Morrison and C. W. Williams, so long as they had an actual interest—so far as they had an actual interest in the entire Baird matter, and these three suits were all a piece of the Baird matter." The witness further testified that the Baird matter had not been completed, but was still pending, when he gave the substitution of attorney to Mr. O'Connor.

*Osborn* v. *Hopkins,* 160 Cal. 501 [Ann. Cas. 1913A, 1413, 117 Pac. 519], quoted by counsel for appellant, was a case of a general employment of an attorney who represented his client in a number of separate matters. The Baird matter, however, was one employment or matter with a single objective—the establishment of McColgan's title in a certain interest in the David J. Baird estate. Incidental to that objective it became necessary to defend several actions and to prosecute a proceeding under section 1664 of the Code of Civil Procedure. These actions were not single, distinct matters, but if they were, none of them had terminated more than two years prior to the commencement of this action and Mr. Cullinan was required to give them his attention up to the conclusion of his employment, which employment was concluded December 31, 1920 (*Hancock* v. *Pio Pico,* 47 Cal. 161). In *Taft* v. *Shaw,* 159 Mass. 592 [35 N. E. 88], the supreme court of Massachusetts, speaking through Mr. Justice Holmes, says: "The insolvency proceedings, however, were finished in 1885, so that the claim for services in them is barred if they were rendered under a separate contract. The plaintiff contends that these services were only incidental to the suit, and were rendered under an entire contract covering both matters. Taft testified that soon after he had brought the suit the defendant in it, E. D. Shaw, went into insolvency, and he was consulted by the present defendant, and at his request did what he did in the insolvency proceedings, and that he did it with reference to the suit, and as a part of it. It is true that he also testified that he was consulted by three other creditors, and that it was the understanding from the time that he went to the creditors' meeting that the proceedings should be in the interest of all of those four creditors. But this is not inconsistent with the other testimony and does not necessarily have any bearing on the question of the nature of the contract between Taft and the present defendant. We cannot say that the judge was not warranted in finding that the plaintiff was entitled to recover the full amount of the claim." (See, also, *Rowan* v. *Chenoweth,* 49 W. Va. 287 [87 Am. St. Rep. 796, 38 S. E. 544, 545]; *Riverview Land Co.* v. *Dance,* 98 Va. 239 [35 S. E. 720]; *Elwell* v. *Roper,* 72 N. H. 254 [56 Atl. 342, 343].)

In *Osborn* v. *Hopkins, supra,* quoted from by appellant, the attorney was engaged to defend a husband in any actions for divorce or maintenance that his wife might bring. He defended three such actions. Obviously, each action was a separate piece of work. There was no affirmative general objective. In each case the object was to win that case. Had the attorney been employed to obtain a divorce for the husband instead of defending one for him —an affirmative instead of a purely negative service— the situation would have been different. As counsel for respondent suggests, suppose, on the contrary, the attorney was employed to secure a divorce for his client and had brought an action in one jurisdiction and had then abandoned or dismissed it for reasons of convenience, policy, or jurisdiction and commenced an action in another court, another county, or another state, it is clear that each action would not have been deemed a separate service or employment, for all would have been moves to obtain for his client a decree of divorce. The same would be true of services which he might have rendered incidentally in defending the husband against a cross-complaint or another action for divorce the wife might institute as a counter attack, for the wife's success in such litigation would defeat the husband's objective, namely, the procuring of a divorce. The facts in *Osborn* v. *Hopkins* are not analogous to the facts in the present case, which more nearly parallel those in *Taft* v. *Shaw, supra.*

Appellant raises the question concerning respondents' employment in *Estate of Baird,* that respondents "abandoned" the proceedings under section 1664 of the Code of Civil Procedure "as being a waste of time." In regard to this, Mr. Cullinan testified that when he got the proceeding at issue it was obvious that it would be a waste of time to go further with it at that time until Dodie Valencia had either established or failed to establish the claim of her son. Appellant also with respect to the Baird case complains that respondents "declined to specify the charge for each of the consultations, or the number, nature or extent of the consultations, but insisted in 'bunching' all services together and insisted on pursuing the same arbitrary method in charging for consultations." Mr. Cullinan testified that he was unable to specify those matters

with the particularity desired by appellant's counsel. Appellant, however, was not precluded from proving by his own witnesses the value of each item of service rendered by respondents in the Baird employment or any other employment involved in the action. If Mr. Cullinan could not recall the number of consultations and the particular subject of consultation in each instance, it is hard to see how he could be required to testify regarding them. Both Mr. Cullinan and the expert witnesses who testified in his behalf to the value of all or some of the services performed place a valuation on each separate piece or unit of work to which their testimony related as the various matters are set out in the amended bill of particulars. The rule seems to be that where the retainer is general and an attorney advises his client or performs services in a number of distinct matters, he may properly be required to set out his charge for each distinct matter. That was done in this case as the amended bill of particulars and the testimony of Mr. Cullinan and the expert witnesses make very plain. But the authorities seem to be without conflict that when the services of an attorney all relate to one subject matter it forms no just measure of the value of the services to separate the transaction into parts and have the attorney state what charge he made for each separate part. In *Moore* v. *Scharnikow,* 48 Wash. 564 [94 Pac. 117, 120], the supreme court of Washington uses this language: ''The only correct method is to view the service as a whole, since by no other method can one of its most important elements, namely the result of the service to the client, be taken into account in estimating the value of the service. From the earliest times the courts have made this distinction between a bill of particulars for an attorney's service and bills of particulars of accounts generally.'' The court in *Moore* v. *Scharnikow* cites to the same effect *Randall* v. *Kingsland,* 53 How. Pr. (N. Y.) 512; *Pierce* v. *Wilson,* 48 Ind. 298; *Davis* v. *Johnson,* 96 Minn. 130 [104 N. W. 766]; *Donahue* v. *Pomeroy,* 65 Hun, 620 [19 N. Y. Supp. 569], and further says: ''The case of *Plummer* v. *Weil,* 15 Wash. 427 [46 Pac. 648], is not an authority for the position taken by the court below. In that case the appellant sought to recover for services that not only extended over a long period of time, but which

related to many distinct matters. The court by its order required the attorney to set out the several matters in which he claimed to have performed services, and the charges made for each separate matter, but there was no requirement that he split up into parts the services performed in any one distinct matter, and make a charge for each separate part." This same rule is followed in the later case of *Thorp* v. *Ramsey,* 51 Wash. 530 [99 Pac. 585].

As to the services rendered, Mr. Cullinan testified in detail concerning the service rendered and the time when rendered and that such services were not completed within two years prior to the commencement of the action, not only with respect to the Baird matter but concerning the services rendered in all other cases and matters submitted to the jury, and the jury was definitely instructed to make no allowance for any service that the plaintiff had not proved to the jury's satisfaction to have been performed for the copartnership within the period of the statute. Any failure of plaintiffs to prove the performance of a particular service within the two years or to prove the value of that particular service must have resulted to their disadvantage, and the defendant, surely, may not complain of it, especially in view of his waiver of the right to raise the point that the evidence is not sufficient to justify the verdict. Since it is conceded that the evidence is sufficient to justify the verdict, a failure to specify the value placed by respondents on each item of service has resulted in no harm to appellant.

As to appellant's contention that he is not liable for services rendered at the request of Daniel A. McColgan, his brother and partner, because respondents have not shown that the decedent, Daniel A. McColgan, in employing respondents, acted within the scope of his authority, it may be said that the third amended complaint alleges and the answer thereto admits the copartnership between Reginald McColgan and Daniel A. McColgan and that they were loan brokers. Reginald McColgan, called as an adverse witness under section 2055 of the Code of Civil Procedure, admitted that his brother employed Messrs. Cullinan & Hickey for the copartnership on copartnership business and with his knowledge and consent. Mr. Cullinan testified that his employment was by the firm of which Reginald McColgan

is the surviving partner, that he was employed to act for the copartnership and that the McColgans were the real parties in interest and the parties whose interests he represented in all the matters in which he sought compensation.

 Appellant also asserts that the decedent in employing respondents "for third persons" had no authority to bind the partnership and that the employment in the Baird Contra Costa litigation was employment by Daniel A. McColgan individually· and not ˙for services to the McColgan copartnership; that such services were rendered to "Miles T. Baird" and that the appearances as made were made for Miles T. Baird. The testimony, however, shows that in the Baird, as in other matters, D. A. McColgan employed Cullinan & Hickey to act for the ˌcopartnership. In the litigation in which respondents appeared the formal appearance was at times for clients of, or for trustees or dummies for, the McColgans, but all the litigation involved the copartnership interests. But even if any separate litigation did not involve a copartnership interest of the McColgans, the employment was by and on behalf of the copartnership business, and it was ·the copartnership that promised to pay for the services. The person liable to compensate an attorney for his services is the one who employs him, not necessarily the one who receives the benefit of the services (*Kelly* v. *Ning Yung*, 2 Cal. App. 460, 466 [84 Pac. 321]). This is not a case of a partner guaranteeing the obligation of a third party.

 The contention that the employment of respondents in the Baird matter resulted in no benefit to the McColgans is without merit. While Mr. Cullinan testified that the services rendered by him were of great benefit, it is not the law that a lawyer must be successful in litigation and actually recover or preserve property for a client before he may become entitled to the value of his services on a *quantum meruit* (*Foltz* v. *Cogswell*, 86 Cal. 542, 548 [25 Pac. 60]; *French* v. *Cunningham*, 149 Ind. 632 ·[49 N. E. 797]). "A lawyer is not an insurer of the result in a case in which he is employed, unless he makes a special contract to that effect and for that purpose" (*Babbitt* v. *Bumpus*, 73 Mich. 331 [16 Am. St. Rep. 585, 41 N, W. 417]). In the Baird matter, as in all other matters in which services were rendered by respondents for the Mc-

Colgan partnership, the uncontradicted testimony of Mr. Cullinan is that the services were performed at the request and under the eye of D. A. McColgan, who was himself a lawyer and who was kept informed of every step taken, and every paper filed.

█ Appellant objected to Mr. Cullinan testifying to declarations made to him by D. A. McColgan, who died prior to the commencement of the action, in the absence of appellant, which objections were overruled by the court, appellant claiming that the estate of the decedent would be adversely affected by a judgment against the surviving partner. This is an action against a surviving partner and is neither against "an executor or administrator" nor "upon a claim or demand against the estate of a deceased person." So far is a surviving partner from being the same as an executor or administrator of a deceased partner's estate that he is barred from appointment as such (Code Civ. Proc., sec. 1365), and the executor or administrator has no voice in the settlement of the partnership affairs (Code Civ. Proc., sec. 1585). Subdivision 3 of section 1880 of the Code of Civil Procedure has always been strictly and literally construed and has never been extended to cover cases nor parties not within the express terms of the statute (*Merriman* v. *Wickersham*, 141 Cal. 567 [75 Pac. 180]; *City Savings Bank* v. *Enos*, 135 Cal. 167 [67 Pac. 52]; *Poulson* v. *Stanley*, 122 Cal. 655 [68 Am. St. Rep. 73, 55 Pac. 605]; *Booth* v. *Pendola*, 88 Cal. 36 [23 Pac. 200, 25 Pac. 1101]; *Maguire* v. *Cunningham*, 64 Cal. App. 536 [222 Pac. 838]). The California cases cited by appellant are actions against executors or administrators and are not authority that subdivision 3 of section 1880 of the Code of Civil Procedure has application here.

Appellant complains that in the case of *Bell* v. *McColgan* respondents declined to segregate the services or itemize them or their value or furnish the jury any data or facts upon which it could determine the reasonable value of the services. In *Estate of Seiler* it is contended the alleged services were performed more than two years before the suit was filed and that respondents were unable to state the nature or extent or furnish any facts upon which the jury could intelligently determine the reasonable value and also that the services were not rendered for the McColgan

partnership but for third persons; that the employment in *Estate of Callaghan* was to render services for third persons; that in *Estates of Jeremiah* and *John Mahony* the claim is barred by the statute and is being based on an employment by D. A. McColgan and having no relation to the partnership business and also on an employment by D. A. McColgan as agent for Reginald Bell. In *Estate of Monnier* appellant asserts the claim was barred by the statute and based on an employment of respondents by D. A. McColgan to represent the interests of third persons; that the claim in *Estate of Eusebia Woolley* was barred by the statute and it was therefore error to submit this claim to the jury. In the Lineker case appellant repeats his claim respecting the segregation of the services, that Mr. Cullinan was unable to place a valuation of each particular item of services rendered, and in *McColgan* v. *Magee* the same objection is urged. In *Vandall* v. *Baggott* it is claimed the services were rendered to C. H. Williams and not to the McColgan partnership, and in *Forrest* v. *Gage* that the claim was barred, and further the services rendered were rendered D. A. McColgan and R. McColgan as trustees, and therefore the court erred in submitting this claim to the jury.

What has already been said respecting the objections urged against the claim for services in the Baird matter has application to the claims in the cases and matters enumerated, and it may further be said that according to the amended bill of particulars which was testified in detail by Mr. Cullinan to be correct, none of these matters or cases were concluded more than two years prior to the commencement of the action and that where the services were performed in cases or matters in which respondents' formal appearance was for third parties, the contract of employment was with the copartnership. These matters, the dates of employment and the conclusion of the services and all matters connected with them, whether or not respondents were appearing in litigation for third parties or under contract of employment by the copartnership or by the copartnership as trustees, were determined by the jury upon the evidence presented and which evidence was sufficient to support its findings.

In *Pacific Improvement Co.* v. *Maxwell, supra,* the court says: "Issues having been joined on the plea of the statute of limitations, and the evidence on this phase of the case being conflicting, the question as to when with reference to the commencement of the action the defendant's cause of action on his counterclaim accrued, was a mixed question of law and fact, which was properly left to the jury for determination" (see, also, *Crawford* v. *Duncan,* 61 Cal. App. 647 [215 Pac. 573]).

Under the heading "Other erroneous rulings" appellant complains that the trial court erred in permitting the witness Cullinan to testify, over his objection, to the profit D. A. McColgan made out of the loan in which he was interested in the Forrest-Gage case, and cites *People* v. *Supervisors,* 45 N. Y. 202, as authority for his contention. While such evidence may have been immaterial as an element in determining the value of the professional services alleged to have been rendered, we cannot see, even if improperly admitted, how it could have prejudiced appellant.

Regarding appellant's contention that the court erred in refusing to permit him to prove that services of considerable value were rendered the McColgans under an agreement that they were to be taken in *pro tanto* satisfaction of the claim of respondents, it may be said that no set-off or counterclaim was pleaded in the answer, except a claim for damages, which was abandoned. Such a counterclaim or offset must be pleaded (Code Civ. Proc., secs. 437, 438 and 439).

Appellant urges error in the court's refusing to permit appellant to show that part of the consultations for which respondents are seeking to recover compensation were in fact consultations concerning the business of respondents by them entrusted for transaction to the McColgans as their agents. In view of the testimony of Mr. Cullinan, who several times testified that he was seeking compensation only for consultations with D. A. McColgan on the McColgans' business, and the instruction of the court, "You are instructed that Daniel A. McColgan would have no right or authority to bind or make liable the copartnership composed of himself and the defendant for services rendered by the plaintiffs, unless such services concerned the business of the partnership and were within the scope

of the partnership business. The burden of proving that the services rendered were services of the character stated is upon the plaintiff. In the absence of such proof respecting any of the alleged services, your verdict must be in favor of the defendants as to such services," we can but assume that the jury in its verdict awarded compensation for consultations only on business in which the co-partnership was concerned.

■■■■ Appellant next contends that the court erred in refusing defendant leave to amend his answer, and cites us to a number of cases as holding that, where the trial court abuses its discretion in denying a party to an action leave to amend, that the appellate court will order a reversal. In the present case, however, we cannot say that the trial court abused its discretion. While the court should exercise its power of granting amendments freely and liberally in order that all the substantial merits of a cause may be reached and determined, yet when the court has exercised its power, either by granting or refusing an amendment, the ruling is subject to review only when it is apparent that an abuse of discretion has occurred (*Wixon* v. *Devine,* 91 Cal. 477 [27 Pac. 777]; *Miner* v. *Rickey,* 5 Cal. App. 451 [90 Pac. 718]). An application to amend may be denied where no showing is made to justify the exercise of a court's discretionary power, or where there is negligence indicating bad faith (*Tulare Building etc. Assn.* v. *Coleman,* 5 Cal. Unrep. 334, 336 [44 Pac. 793]). The following colloquy, when appellant was a witness, will serve to show that the court did not abuse its discretion: "Q. Did you ever—were you and your brother—were you carrying on any business or doing any—or performing any services for Cullinan & Hickey during this period? Mr. McNab: What period? Mr. Erskine: Q. During the period covered by this general consultation fee, five hundred dollars. A. Well, I will tell you, he came to me one day and he wanted to get— Mr. McNab: Just a moment. This is a matter which counsel stated in his opening statement he expected to prove, but the answer of the defendant in this case distinctly denies that any services were performed, distinctly denies that he or the partnership ever at any time authorized Cullinan to perform any services, and does not plead the payment even—denies that

the amount which we allege was paid $3600—even denies that was paid. It does not set up any claim to payment and it does not set up any counterclaim of any kind or make any claim whatever, save one, and that is the cross-complaint, a suit for $6000 damages against Mr. Cullinan for the alleged failure to serve a summons in one matter. Now any testimony of that character, I respectfully submit, cannot be introduced here. The Court: I will sustain the objection. Mr. Erskine: My purpose was— Mr. McNab: We know your purpose. Mr. Erskine (continuing): —was to show that there was an arrangement here at least that some of these services performed that I referred to—performed by McColgan were in payment, and an offset on the claim now made and that some of the consultations that they allege were had, were had about Cullinan & Hickey's own business. The Court: That cannot be done under the answer. There is no offset claimed. Mr. Erskine: Will your Honor allow me at this time to amend my answer? The Court: No, I cannot do that. It is too late. This comes at the end of the trial after the case has been pending for two years and a half, and to set up a plea of payment, which is waived, if there ever was one, under the provisions of the code.'' The facts stated by Mr. McNab, counsel for plaintiffs, in his objection are fully borne out by the record, and we therefore think the present case falls under the conclusion of ''inexcusable negligence'' reached in *Tulare Building Assn.* v. *Coleman, supra.*

Appellant's next objection is that the court in permitting the witness Williams to testify on the basis of his personal observation as to the reasonable value of the services of respondents in the case of *Bell* v. *McColgan;* that opinion testimony as to the value of services must be restricted to the services in evidence and cannot extend to personal observations of the witness unless the facts he observed are first detailed by him. In answer to this contention it may be said that apart from the testimony of the witness Williams, there is the testimony of the value of the services by Mr. Cullinan, Nathan Moran, Louis V. Crowley, and Louis S. Beedy, and the testimony of Mr. Williams was merely cumulative, and it cannot be said under the circumstances that appellant was in any way

prejudiced. Furthermore, the testimony of experts as to the value of legal services is not conclusive, nor does it necessarily control the verdict of the jury. As was said by Mr. Justice Field in delivering the opinion of the court in *Head* v. *Hargrave*, 105 U. S. 45 [26 L. Ed. 1028] : "It is the province of the jury to weigh the testimony of the attorneys as to the value of the services by reference to their nature, the time occupied in their performance, and other attending circumstances, and by applying to it their own experience and knowledge of the character of such services. To direct them to find the value of the services from the testimony of the experts alone, was to say to them that the issue should be determined by the opinions of the attorneys, and not by the exercise of their own judgment of the facts on which these opinions were given." And in *Spencer* v. *Collins*, 156 Cal. 298, 306 [104 Pac. 320, 323], the court says: "The testimony of experts is, of course, admissible to prove the value of attorneys' services (citing authorities). But the opinions of experts in such cases are not binding on the jury, who may apply to the testimony their own experience and knowledge of the character of such services." (See, also, *Estate of Duffill*, 188 Cal. 552 [206 Pac. 42] ; *Estate of Iser*, 52 Cal. App. 405 [198 Pac. 1014].)

Appellant complains of the court's refusal to give instructions requested by him embracing the following principles of law: For any services rendered by plaintiffs to a third person and not to the partnership composed of Daniel A. McColgan and the defendant, even if rendered at the request of Daniel A. McColgan and he agreed to pay for or become responsible for or guaranteed payment of the same to plaintiffs, the defendant is not liable; that a partner has no right or authority to bind or make liable the partnership nor his copartner for services rendered a third person nor to guarantee or become surety for the payment of the same, unless the authority to do so is in writing and subscribed by his copartner in such a manner as to be binding on the partnership; that plaintiffs cannot recover for services rendered by them in any instance where Daniel A. McColgan or the defendant was named trustee in a deed of trust and the services were rendered the trustee as such; that Daniel A. McColgan had no authority to bind the

partnership as to any matter foreign to the partnership, nor could he make any admissions bringing such matters within the scope of the partnership business; that plaintiff Eustace Cullinan cannot recover in any matter, suit, or litigation concerning any deed of trust in which he was designated as a trustee; that if plaintiffs were employed by the partnership in any specific litigation, such services included all incidental advice and consultations and such advice and consultations cannot be made the basis for a separate charge; that the jury cannot award plaintiffs compensation for consultations or advice in the absence of any evidence as to the specific nature or character of the consultations or advice in each instance and of the reasonable value of each of the specific consultations; that plaintiffs are restricted by the allegations of their complaint to professional services and cannot recover for services of a nonprofessional nature, such, for instance, as trips to Santa Barbara or elsewhere to examine lands and determine their value; that in determining the value of services the jury cannot take into consideration the matter of defendant's wealth nor the amount of profit in any particular transaction; that the jury should disregard and give no weight to the testimony of the witness Cullinan respecting the acts, declarations, and statements of Daniel A. McColgan, deceased, such being incompetent against the surviving partner; that plaintiffs cannot recover on a *quantum meruit* for services that were of no benefit to the partnership; that Eustace Cullinan cannot recover compensation for services rendered in preparation for defense of himself as a party defendant in the case of *Lineker* v. *McColgan et al.*

Answering the objection that plaintiffs cannot recover for any services rendered where Eustace Cullinan performed · services as trustee or appeared in an action in which by reason of being a trustee he was made a party, or be allowed compensation where Daniel A. McColgan was named as a trustee in a deed of trust, it may be said that, while plaintiff Eustace Cullinan was a nominal party to the action as trustee, the McColgans were also parties, and respondents represented them as their attorneys and are suing for services rendered directly to them, and the instructions that were given made such fact sufficiently

plain to the jury, and the same may be said with respect to representing them in the matter in which Daniel Mc-Colgan was a trustee in the deed of trust.

The objections that the defendant's wealth could not be taken into consideration by the jury and that the jury should disregard declarations made by the deceased partner and that compensation could not be awarded for consultations in the absence of evidence as to the reasonable value of each specific consultation have already been sufficiently discussed.

As to the objections that the court refused to give the other instructions summarized, it may be said that such portions of the requested instructions as are proper and material are sufficiently covered in other instructions given. The jury was instructed "that Daniel A. McColgan would have no right or authority to bind or make liable the co-partnership composed of himself and the defendant, for services rendered by the plaintiffs, unless such services concerned the business of the partnership and were within the scope of the partnership business. The burden of proving that the services rendered were services of the character stated is upon the plaintiffs. In the absence of such proof respecting any of the alleged services, your verdict must be in favor of the defendant as to such services."

This disposes of the points raised by appellant, and from what has been said it follows that in our opinion the record contains no error calling for a reversal of the judgment. The equities of the case seem to be with respondents. There can be no doubt but that respondents rendered considerable service for which they have not been compensated. The issues presented were fairly tried, and the amount of the verdict is not disproportionate to the value of the services rendered.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 16, 1928.

All the Justices concurred.