[Civ. No. 15646. First Dist., Div. One. Feb. 3, 1954.]

DOMENIC RUBINO et al., Appellants, v. UTAH CAN-
NING COMPANY, Defendant; LOUIS T. SNOW &
CO. (a Corporation), Respondents.

Ferrari & Ferrari for Appellants.

Bronson, Bronson & McKinnon for Respondent.

FINLEY, J. pro tem.*—This is an appeal by plaintiffs from a judgment dismissing their amended complaint following the sustaining of a demurrer thereto after which plaintiffs failed to amend.

*Assigned by Chairman of Judicial Council.

The question presented is whether the action is barred by a statute of limitations.

Plaintiffs, husband and wife, allege in their amended complaint that on October 2, 1950, they ate some Del Mesa brand peas at the home of a niece; that these peas were canned by the Utah Canning Company, distributed by respondent Louis T. Snow & Co., and purchased from First Doe Grocery Store; that at the time of said purchase defendants and each of them had impliedly warranted that said peas were a food fit for human consumption; that unknown to plaintiffs they were not so fit and that after having eaten some of the peas plaintiffs became violently ill; that immediately following the "appearance of the symptoms hereinabove described," plaintiffs "made diligent investigation to determine the cause of said symptoms but were unable to do so until on or about the first day of February, 1952 . . ."

The original complaint was filed on February 27, 1952. A demurrer was sustained to it and the amended complaint filed on June 23, 1952. Demurrer was again interposed, urging among other grounds the bar of the one year statute of limitations, subdivision 3, section 340, Code of Civil Procedure. This demurrer was also sustained with leave to amend, but plaintiffs failed to do so. Judgment followed in favor of Louis T. Snow & Co., the only defendant appearing, and apparently the only one served.

Appellants contend that the cause of action here is one for breach of implied warranty, which sounds in contract, and therefore comes within the purview of subdivision 1, section 339, Code of Civil Procedure, the two year limitation statute. They also contend that the statute started to run not from the date of injury but from the date of discovery of the cause of injury.

Respondent urges that an action for personal injuries, even though couched in terms of breach of warranty, is one in tort and is barred by the provisions of subdivision 3, section 340, Code of Civil Procedure, the one year statute, and also that in an action for personal injuries resulting from the wrongful act of another, the statute of limitations runs from the time the wrong was committed and not from the time of discovery of the cause of injury.

The answer to the question as to which statute of limitations governs must be found in an analysis of the two sections of the Code of Civil Procedure above referred to. Are these sections mutually exclusive; are they mutually inclusive, at

least in part, or does one lay down a more general rule which may include causes specifically enumerated in the other without the converse being true? In other words, is one general while the other is more specific but included in the general?

Subdivision 1, section 339, Code of Civil Procedure, so far as applicable here, provides a two year limitation within which an action may be brought "upon a contract, obligation or liability not founded upon an instrument in writing . . ."

■ There is ordinarily no privity of contract between a processor of foods for human consumption and the ultimate consumer thereof. The liability of the processor to the consumer is founded upon an implied warranty of fitness of the food for that purpose. (Civ. Code, § 1735; *Vaccarezza* v. *Sanguinetti*, 71 Cal.App.2d 687 [163 P.2d 470]; *Klein* v. *Duchess Sandwich Co., Ltd.*, 14 Cal.2d 272 [93 P.2d 799]; *Dryden* v. *Continental Baking Co.*, 11 Cal.2d 33 [77 P.2d 833].)

■ An implied warranty, one imposed by law, is obviously ". . . a contract, obligation or liability not founded upon an instrument of writing . . ." Were we to go no further it would seem apparent then that subdivision 1, section 339, Code of Civil Procedure, would govern and that any action predicated upon a *liability* for violation of an implied warranty must be brought within the two year limitation. It will be noted, however, that the language of the section above quoted is quite general. There is no indication that the "obligation or liability" referred to *must* depend in any degree upon an oral or implied contract or that personal rights or injuries as well as property rights could not be the basis for the "obligation or liability." Further, there is nothing to indicate a legislative intent that that section *must* apply to all cases falling within its purview to the exclusion of a shorter limitation period applying to a restricted but included classification.

Section 340 of the Code of Civil Procedure provides a one year limitation within which actions based upon the causes enumerated must be brought. At the time this action was commenced subdivision 3 of that section read, in part, as follows: "An action . . . for injury to or for the death of one caused by the *wrongful act* or neglect of another, or by a depositor against a bank for the payment of a forged or raised check, or a check that bears a forged or unauthorized endorsement." (Emphasis added.)

There is no provision in this subdivision which would fall without the scope of the language of subdivision 1 of section 339 of the Code of Civil Procedure. The words "contract," "obligation" or "liability" used in the latter about cover the field. The only qualification is that they cannot be founded upon an instrument in writing. An action for "injury to or for the death of one caused by the wrongful act or neglect of another," whether the wrongful act be the breach of an implied contract or obligation or liability or whether it be based upon neglect to perform an obligation implied or imposed by law, would still be in violation of a "contract, obligation or liability not founded upon an instrument of writing." On the other hand, there could be many violations of a contract, obligation or liability not founded upon an instrument of writing which would not result in "injury to or for the death of one caused by the wrongful act or neglect of another." ■ Therefore we see that all violations of subdivision 3 of section 340, Code of Civil Procedure, would fall within the more general provisions of subdivision 1, section 339, Code of Civil Procedure, but that not all of the possible liabilities arising under subdivision 1 of this section would also fall within the provisions of subdivision 3 of section 340, Code of Civil Procedure. Subdivision 3 of section 340, Code of Civil Procedure, is obviously, therefore, the more specific and subdivision 1 of section 339, Code of Civil Procedure, the more general of the two.

In this action plaintiffs claim *injury* caused by *acts* of defendants in canning, distributing and selling peas unfit for human consumption. It is not alleged in the complaint in so many words that these acts were *wrongful*, but if they were not wrongful in contemplation of law, either as a breach of contract is wrongful or the commission of a tort is wrongful, then they must be rightful. If they are not considered in law to be wrongful, then plaintiffs would have no cause of action.

In Bouvier's Law Dictionary, Rawle's Third Revision, "wrong" is defined as "An injury; a tort; a violation of right . . . In its most usual sense, wrong signifies an injury committed to the person or property of another, or to his relative rights unconnected with contract; and these wrongs are committed with or without force. But in a more extended signification, wrong includes the violation of a contract; a failure by a man to perform his undertaking or

promise is a wrong or injury to him to whom it was made; 3 Bla. Com. 158.''

In order for a cause of action against respondent to have arisen, the injury to appellants must have been caused by the *wrongful act* or *neglect* of respondent, and whether considered wrongful as a breach of implied contract of warranty, or wrongful as an indirect assault upon the persons of plaintiffs, the cause would still fall within the language of subdivision 3 of section 340 of the Code of Civil Procedure.

As further evidence that the Legislature did not intend to exclude causes of action founded upon implied contract or warranty from the one year limitation effected by section 340 of the Code of Civil Procedure it will be remembered that subdivision 3 thereof specifically covers actions by ''a depositor against a bank for the payment of a forged or raised check, or a check that bears a forged or unauthorized endorsement.'' ■ The relationship between a bank and its depositors is that of debtor and creditor. (*Glassell Dev. Co.* v. *Citizens' Nat. Bank,* 191 Cal. 375 [216 P. 1012, 28 A.L.R. 1427]; *Union Tool Co.* v. *Farmers etc. Nat. Bank,* 192 Cal. 40 [218 P. 424, 28 A.L.R. 1417]; *Basch* v. *Bank of America,* 22 Cal.2d 316 [139 P.2d 1].) ■ The debtor and creditor relationship, whether express or implied, is certainly contractual in nature. The case of *Allen* v. *Bank of America,* 58 Cal.App.2d 124 [136 P.2d 345], specifically holds that the relation between banker and depositor is founded on contract, and it is common knowledge that most of the reciprocal rights and duties between them are implied or supplied by law.

■ When we stop to consider that an action by a depositor against a bank for the payment of a forged or raised check or an action on account of a check that bears a forged or unauthorized endorsement is brought under the one year statute by inclusion in the same sentence of the same subdivision, to wit, subdivision 3 of section 340, Code of Civil Procedure, as is an action for injury to or for the death of one caused by the wrongful act or neglect of another, it becomes obvious that the language of the section does not exclude relationships based upon implied contract or warranty.

■ In the absence of an express agreement, there is an implied agreement or warranty on the part of a bank that it will not pay out the depositor's money on a ''forged or raised check'' or a ''forged or unauthorized endorsement.'' It has been held, however, that while in a sense injury stemming

from a violation of the banker-depositor relationship arises from contract, it is nevertheless viewed in another sense, independent of contract, and sounds in tort involving an element of wrong or a violation of duty. (*Siminoff* v. *Jas. H. Goodman & Co. Bank,* 18 Cal.App. 5 [121 P. 939]; *Reeves* v. *First Nat. Bank,* 20 Cal.App. 508 [129 P. 800].)

In the unfit food cases involving personal injury the reasoning is similar to that in the banker-depositor cases holding that actions brought for violation of such an implied agreement *may* be ex delicto. In *Gosling* v. *Nichols,* 59 Cal.App.2d 442 [139 P.2d 86], the court said: "The gravamen of a cause of action for breach of an implied warranty that food is fit for human consumption is the personal injury which results, and the action 'sounds in tort.' The cause of action is not ex contractu." (See, also, *Singley* v. *Bigelow,* 108 Cal.App. 436 [291 P. 899]; *DeMirjian* v. *Ideal Heating Corp.,* 91 Cal.App.2d 905 [206 P.2d 20]; *Jones* v. *Kelly,* 208 Cal. 251 [208 P. 942]; *Escola* v. *Coca Cola Bottling Co.,* 24 Cal.2d 453 [150 P.2d 436] (concurring opinion of Justice Traynor); *Speer* v. *Brown,* 26 Cal.App.2d 283 [79 P.2d 179].)

In the leading case of *Basler* v. *Sacramento etc. Ry. Co.,* 166 Cal. 33 [134 P. 993], however, which was an action for injuries sustained while riding on a streetcar, we find this language: "The demurrer was properly sustained for the reason that the cause of action was pleaded as one arising *ex delicto,* but even if we should regard it as arising *upon contract,* nevertheless the damages sought are directly referable to the *personal injuries* suffered by Mrs. Basler and consequently the time for the commencement of the action is limited by the terms of subdivision 3 of section 340 of the Code of Civil Procedure." (Emphasis added.) This language was quoted with approval in *Marty* v. *Somers,* 35 Cal.App. 182 [169 P. 411], a malpractice case wherein appellant claimed an express undertaking by the physician " 'to cure him of bladder trouble.' " The treatment left him in worse condition than before. In deciding that subdivision 3, section 340, Code of Civil Procedure, applied, the court said, at page 183: "In support of the appeal it is urged quite earnestly that the action is one for breach of contract to effect a cure; but it appears quite plain to us from a consideration of the allegations of the complaint above recited that the action sounds in tort, and is for the recovery of damages for the defendant's wrongful act or neglect, thus bringing it within the operation of the code section referred to."

From this language it may appear that the court intended to imply that the action must be ex delicto before subdivision 3, section 340, Code of Civil Procedure, would apply. Following the language just quoted, however, the court goes on to say: "We think this case is disposed of by what is said in *Basler* v. *Sacramento etc. Co.,* 166 Cal. 33 [134 P. 993] . . ." The court then goes on to set forth the same quotation from the Basler case as appears hereinabove, thus indicating that the decision would be the same even though considered as arising from contract. In *Harding* v. *Liberty Hospital Corp.,* 177 Cal. 520 [171 P. 98], the court states (p. 524): "Notwithstanding the conflict of authority from other jurisdictions, we are satisfied that it has become the settled rule in California that actions for injuries caused by the negligent acts of another or his agent must be commenced within the period of one year from the date of the alleged injury, and that the fact that the parties stand in contractual relation to each other does not operate to change the rule or extend the time for the commencement of such actions."

In principle we can see no difference whatsoever between *Marty* v. *Somers, supra,* 35 Cal.App. 182, and the case of *Crawford* v. *Duncan,* 61 Cal.App. 647 [215 P. 573], which was an action against a physician to recover damages resulting from the breach of an express *oral* contract whereby he warranted that his radium treatment of plaintiff would not leave a permanent scar. The result was a scar which was large and disfiguring. Without setting forth the supporting reasoning or citing authority the court said: "This is not an action of tort. That is, it is not an action for malpractice based upon negligence. It is an action for the breach of an alleged oral agreement whereby defendant warranted that his radium treatments would not leave a permanent scar. It is subdivision 1 of section 339 of the Code of Civil Procedure, therefore, and not subdivision 3 of section 340 of that code, which is applicable; and the statute of limitations did not run until the expiration of two years from the time when plaintiff's cause of action accrued."

It would be difficult also to point out an essential difference between the Crawford case and *Hall* v. *Steele,* 193 Cal. 602 [226 P. 854]. In the latter a surgeon and dermatologist expressly represented to the patient that by plastic surgery he could alter the shape of her lower lip in a manner outlined. The result was not according to the specifications, and the

patient brought suit. The court held that the action was one sounding in tort and that "the sole actionable issue . . . [was] whether or not the operation was skillfully or unskillfully performed."

We do not see how the decision in *Crawford* v. *Duncan, supra,* 61 Cal.App. 647, can be reconciled with the decisions in *Marty* v. *Somers, supra,* 35 Cal.App. 182, an earlier District Court of Appeal case, or *Hall* v. *Steele, supra,* 183 Cal. 602, a later Supreme Court case, or with such cases as *Harding* v. *Liberty Hospital Corp., supra,* 177 Cal. 520; *Kelsey* v. *Tracy,* 42 Cal.App. 409 [183 P. 668]; *Wetzel* v. *Pius,* 78 Cal.App. 104 [248 P. 288]; *Kershaw* v. *Tilbury,* 214 Cal. 679 [8 P.2d 109]; *Huysman* v. *Kirsch,* 6 Cal.2d 302 [57 P.2d 908].

It is true that in *Hall* v. *Steele, supra,* 193 Cal. 602, the court indicated a different rule *might* apply in the case of a naturopath or "beauty doctor," than would apply in the case of regular medical physicians and surgeons where such a practitioner undertook to remedy a deformity or defect and produced another and perhaps more objectionable deformity. But the point was not involved there and was not decided. The defendant in *Crawford* v. *Duncan, supra,* 61 Cal.App. 647, *was* a physician.

Aside from the *Crawford* v. *Duncan* case we are aware of no other decision in this state wherein subdivision 1, section 339, Code of Civil Procedure, was held to apply to actions involving either implied or express oral warranties where personal injuries were involved. We therefore feel that the decision in that case is contrary to the weight of authority in holding that the governing statute of limitations was subdivision 1, section 339, Code of Civil Procedure, rather than subdivision 3, section 340, Code of Civil Procedure. (*Harding* v. *Liberty Hospital Corp., supra,* 177 Cal. 520.)

It seems apparent that the legislative intent behind subdivision 3, section 340, Code of Civil Procedure, was not to restrict its coverage to tort actions independent of any contractual relation, but to provide a limitation of one year where personal injury or death results, regardless of the tort, contract or breach of express or implied warranty aspect of the case. The Uniform Sales Act makes no material distinction between express and implied warranties as far as remedies are concerned. We are satisfied that the instant case falls within the provisions of subdivision 3, section 340, Code of Civil Procedure, and that the action must have been brought

within one year from the time the cause of action arose. (*Basler* v. *Sacramento etc. Ry. Co., supra,* 166 Cal. 33; *Zellmer* v. *Acme Brewing Co.,* 184 F.2d 940; *Harding* v. *Liberty Hospital Corp., supra,* 177 Cal. 520.)

 The next question for consideration is when the statute started to run. Appellants, in their complaint, did not allege fraud or concealment on the part of respondent or the other defendants named, nor was any attempt made to plead a reason for failure to discover the cause of their injury. The allegation was merely that they ''made and caused to be made diligent investigation to determine the cause of said symptoms but were unable to do so until on or about the first day of February, 1952.''

In *Sonbergh* v. *MacQuarrie,* 112 Cal.App.2d 771 [247 P.2d 133], quoting from *Scafidi* v. *Western Loan & Bldg. Co.,* 72 Cal.App.2d 550, 566 [165 P.2d 260], the following appears: '' 'Our courts have repeatedly affirmed that mere ignorance, not induced by fraud, of the existence of the facts constituting a cause of action on the part of a plaintiff does not prevent the running of the statute of limitations (citing cases); and that ''mere ignorance of the facts . . . without some valid excuse for ignorance, was of no consequence.'' (*Dennis* v. *Bint,* 122 Cal. 39, 44 [54 P. 378, 68 Am.St.Rep. 17] (citing authority).)' ''

*Sonbergh* v. *MacQuarrie, supra,* 112 Cal.App.2d 771, was an action brought in 1951 for personal injuries alleged to have been sustained as a result of an assault upon plaintiff in 1948. It was further alleged that plaintiff was unaware at the time of the assault that any substantial injuries had resulted; that he took all reasonable precautions to ascertain if he had been injured, and that he could not have learned the extent of his injuries prior to April, 1951, when it first became possible to make a diagnosis that plaintiff had '' 'organic brain and nervous injuries,' '' proximately caused by the assault. It is true that apparently there was no claim that plaintiff was unaware of the *cause* of his injuries prior to April, 1951. The allegation was to the effect that although he was aware of the assault and the one who committed it, he was not aware that permanent damage had resulted. The trial court was affirmed in its judgment on the pleadings on the ground that the action was barred by the one year statute which started to run from the date of the assault.

In the instant case awareness of immediate damage is admitted but ignorance of the cause is urged to toll the running

of the statute. As held in *Dennis* v. *Bint*, 122 Cal. 39 [54 P. 378, 68 Am.St.Rep. 17], cited with approval in *Sonbergh* v. *MacQuarrie*, *supra*, 112 Cal.App.2d 771, "mere ignorance of the facts . . . without some valid excuse for ignorance, was of no consequence."

 We therefore hold that the statute started to run from the date that plaintiffs became ill by reason of eating the peas; that subdivision 3, section 340, Code of Civil Procedure, applies, and that according to the allegations in the complaint the statute had run at the time the complaint was filed.

The judgment is therefore affirmed.

Peters, P. J., and Bray, J. concurred.