[Civ. No. 8865. Third Dist. July 16, 1956.]

EVELYN MENDOZA, Respondent, v. F. LOUIS GOMES, as Executor, etc., Appellant.

Lawrence W. Young for Appellant.

Linneman, Burgess, Telles & Van Atta and Chandler & Hammerberg for Respondent.

VAN DYKE, P. J.—Appellant as executor of the will of Antonio Lucio, deceased, appeals from a judgment entered upon a jury's verdict in favor of respondent who sued to establish a rejected claim for the reasonable value of services alleged to have been performed for deceased.

There was substantial evidence to the following effect: The testator, a widower, died on October 18, 1953, at the age of 85. His grandnephew, appellant herein, was the sole beneficiary under his will. Respondent, who was a sister-in-law of decedent, had cared for him in her home during the last years of his life. The services began January 1, 1946, when he entered her home, and were continuously performed thereafter to the date of his death. She furnished him room and board and performed extensive personal services. For several years before his death decedent was crippled and could only walk with the aid of crutches. He was unable to drive an automobile and depended upon respondent and her sons for transportation when he wished to go out. In his crippled condition respondent had to assist him when he fell and consequently could not retire at night until he was in bed. Decedent lacked control of his bladder and his bedding as well as his clothes had to be changed and laundered almost daily. His needs were described as being the same as those required by a baby for the last four years of his life. It was shown that respondent spared herself in no way in caring for and attending decedent, although she was not related to

him by blood and was under no legal or moral duty to render to him any services whatsoever. There was a conflict in the evidence as to whether she received any pay, but we must here assume that the jury found, as they could have, that she received none whatever.

From the foregoing evidence the jury were justified in inferring that the services rendered to decedent by respondent were to be paid for at their reasonable worth.

". . . [W]hen services are rendered by one person, from which another derives a benefit, although there is no express contract or agreement to pay for the services, there is a 'presumption of law' which arises from the proof of services rendered, that the person enjoying the benefit of the same is bound to pay what they are reasonably worth." (*Moore* v. *Spremo,* 72 Cal.App.2d 324, 329-330 [164 P.2d 540].)

However, appellant as a defense pleaded the statute of limitations, thereby asserting that, even if decedent was obligated to pay the reasonable value of the services he received, nevertheless the recovery must have been limited to the last two years preceding his death. This was not done. The statute of limitations was not applicable for the reason that the services were continuous, were never paid for, were rendered up to the point of decedent's death and there was evidence from which it could be inferred that they were not to be paid for until terminated. In addition to what has been stated, there was testimony that decedent had said he was going to leave respondent enough to build a house and take care of herself; that he was going to see to it that she had something to get by on when he was gone; that he was going to leave his property to her; that he was going to make it easy for her. When she took the stand respondent was not permitted to testify over objection based upon the so-called dead man's statute. (Code Civ. Proc., § 1880, subd. 3.) Nevertheless, the foregoing was sufficient to avoid the plea of the statute of limitations. In *Mayborne* v. *Citizens Trust & Savings Bank,* 46 Cal.App. 178, 189 [188 P. 1034], it was said in a similar case:

"We think there is no merit in the contention that the claim is barred by the statute of limitations. The services were continuous for a period of twenty years [in this case they were continuous for a period of nine years], and it is a fair inference that it was the intention or expectation that they should be rewarded when terminated. They did not cease

until the death of Mr. Dutton. The case falls clearly within the rule announced in *Krumb* v. *Campbell*, 102 Cal. 370 [36 P. 664] ; *Hagan* v. *McNary*, 170 Cal. 141 [L.R.A. 1915E 562, 148 P. 937] ; *Furman* v. *Craine*, 18 Cal.App. 41 [121 P. 1007] ; *Clark* v. *Gruber*, 74 W.Va. 533 [82 S.E. 338] ; *Morrissey* v. *Faucett*, 28 Wash. 52 [68 P. 352]. They are all to the effect that where the contract is for an indefinite time and no time for payment is specified, the statute does not begin to run until the services end. Of course, the same rule applies to an express contract and to one implied by law.''

In addition to contending that the evidence was insufficient to support the verdict and judgment, which contention we have hereinbefore discussed, appellant claims further that the trial court erred in giving and refusing to give instructions, that respondent's counsel was guilty of prejudicial misconduct, and that certain remarks of the trial court were prejudicial and require reversal. We shall treat these contentions in order.

Appellant requested and the court refused to give an instruction that the jury must first determine whether there was or there was not an oral agreement entered into between respondent and decedent on or about the time he entered respondent's home, all as alleged in the complaint, and that if they failed to find that such an agreement was entered into then they were to deliberate no further but were to render a verdict for the defendant. In amplification of the foregoing appellant also requested an instruction telling the jury that loose statements or expressions of intention as to what one party expected or intended to do for another party who had rendered a service did not constitute a contract, but that it was necessary to prove further that the minds of the parties had in fact met and that they had agreed upon a definite and a certain contract. It is true that the complaint alleged and the answer denied that the services had been rendered pursuant to an oral contract whereby decedent had promised to leave all his property by will to respondent if she would take him into her home during the remainder of his life and there care for him and furnish to him necessary board, lodging, household services and nursing care. However, this action was not one to enforce an oral contract to make a will nor to recover anything other than reasonable compensation for services rendered over the period of nine years and up to the death of decedent under an implied promise on his part to pay the reasonable value thereof. This is amply shown

by considering the pleadings further. It was alleged that notwithstanding the promise to leave his property to her by will the decedent had not kept this promise either in whole or in part; that after his death respondent had filed a claim against the estate of decedent to recover the reasonable value of her services; that the reasonable value of the services she had rendered was the sum of $39,000. In response to a demand for a bill of particulars she broke down the demand as follows: Services for two years at $300 per month; for the next two years at $325 per month; and for the last five years at $400 per month. We think it apparent that the case was pleaded and tried upon the theory that it was a suit for the reasonable value of services rendered requiring only proof sufficient to warrant the inference of an implied agreement to pay. From the continuity of service, from the character of service, from the lack of legal or moral duty to render the service, from the lack of any demand during life or payment made during life and from the statements of the decedent as to his intentions to compensate when he died, a sufficient cause of action was made out. It therefore would have been error for the trial court to tell the jury that the respondent could not recover unless there was an express oral agreement entered into between the respondent and the decedent at the date on which he moved into her home. The action was not upon such a contract, an express contract, but upon an implied contract manifested by conduct. The court instructed the jury that if they believed it could reasonably be inferred from the facts and circumstances of the case that compensation was contemplated by the parties, that respondent had rendered services or furnished support for decedent during the period of time referred to in the complaint and that such services or support were furnished to decedent under conditions and circumstances from which the jury could reasonably infer that respondent expected to be compensated for such services and that the decedent contemplated compensating her therefor, then no further proof of a contract or agreement to compensate was required. We think the court properly instructed the jury and that the instructions refused would have wrongfully narrowed the basis of respondent's right to compensation. (*Beard* v. *Melvin,* 60 Cal.App.2d 421, 429 [140 P.2d 720] ; *Winder* v. *Winder,* 18 Cal.2d 123, 127 [114 P.2d 347, 144 A.L.R. 935].)

There is no merit in appellant's contention that the trial court by its rulings and remarks committed serious and

reversible error. He asserts that the court improperly refused to permit him to testify as to a conversation he had with respondent's former attorney. He offered to prove that after respondent's claim was filed by her present counsel, her former attorney, who neither filed nor pressed the claim, told appellant he had never heard of any oral agreement between respondent and decedent. The trial court correctly held this to be inadmissible. The attorney in question, who was available, was not called as a witness and if it does not fairly appear that at the time of the alleged conversation with appellant he was not the attorney for nor the agent of respondent, it certainly can be inferred that such was his status. He therefore could not bind her by any admission even if we assume (which is a matter of doubt) that an attorney has general power to bind his client by extrajudicial admissions. (See 6 Cal.Jur.2d 348.) Appellant asserts that in ruling upon the objection to this offered evidence the trial court remarked that if the status of the attorney had occurred to him previously he would not have permitted appellant to testify, as he had, that during the time the attorney represented respondent he made no claim of an oral agreement, but merely asserted that respondent had not been paid for the care provided decedent during the last two years of his life. Appellant assigns this statement by the court as prejudicial misconduct. We fail to see how he was injured by the court's statement. The testimony was not stricken after the court's remark and remained in evidence for all purposes and appellant made it the specific subject of argument to the jury. Likewise, no prejudice ensued from a hypothetical question asked by the court and from its remarks in connection therewith. A registered nurse had testified as a witness called by respondent as to the prevailing wages of practical nurses during the years involved. On cross-examination appellant's counsel asked several hypothetical questions and the court sustained objections thereto. The court then stated: ''Having in mind this person is in the home, taking care of four little children, she's doing work for the patient and for the small children all at the same time in the home, that was the general situation, she had them both to take care of, and she had to remain up, usually, sometimes, to a rather late hour, because she wouldn't go to bed until the patient went to bed, and, further, that if he had fallen down he couldn't get up by himself, he had to be assisted, so she had to be up late at all hours of the night, as late as ten,

eleven o'clock at night, sometimes beyond that, but, considering those facts, would you say that her salary should be any less than $8.00 a day?'' Appellant objected to the question, but only on the ground that the witness was not qualified and not on the ground that the question assumed facts not in evidence. However, here the appellant contends that the question was improper because it "told the witness and the jury that the matters set forth in the hypothetical question were facts." We think that neither the witness nor the jury so construed the question and in any event to all practical purposes the facts assumed had been proved in the case without contradiction. In overruling appellant's objection to the question the court remarked: "I think it is about as good a one as you asked." We cannot agree with appellant that the court thereby "completely discredited any question that defendant's counsel had asked the witness."

Appellant contends that respondent's counsel acted in bad faith and for the sole purpose of prejudicing appellant in the eyes of the jury by asking him upon cross-examination whether the deceased had not once broken a fountain pen handed him by appellant at a time when appellant was trying to get decedent to sign a will in appellant's favor. No objection was interposed when the question was asked, but appellant claimed this was because his counsel assumed a foundation was being laid for impeachment purposes. Appellant denied that such an event had occurred and thereafter no attempt was made to impeach him. ■ An attorney asking questions of that sort in such a way as to suggest to the jury that the denials produced are false takes upon himself the burden of making it clear that they are asked in good faith and generally if no such showing is made or proffered he stands convicted of bad faith; but here the matter is complicated by the fact that respondent was thereafter called as a witness and was prevented from testifying by the objections of appellant. The true situation is therefore so beclouded we cannot here declare misconduct. Counsel may have had credible information that the suggested facts were true; and if so he was not obliged to anticipate either that appellant would deny the truth or that when respondent became a witness she would be prevented from testifying. A motion for a new trial was made and denied and we feel we must leave the matter as one peculiarly for the trial court to determine in ruling upon that motion.

■ A further charge of prejudicial misconduct is made

as to the following portion of counsel's argument to the jury to which exception was taken: "Now, there are two rather extraordinary circumstances attending this trial. The first one is that the person who, above all, could have told you with absolute verity and with absolute certainty exactly what the facts of this case were, was not permitted to testify concerning a fact or matter which occurred during the lifetime of this decedent. I do not wish you to feel that I criticize the harshness of the law that resulted in that inability. That is the law. But it could have been waived, and it is fit and proper that you should have in mind the fact that it could have been waived, but that they did not see fit to waive it." That argument should not have been made. Jurors are sworn to uphold the law and attorneys are guilty of misconduct when they suggest any other course of conduct; but we cannot reverse for this misconduct. The trial court promptly instructed the jury to disregard the matter and not to consider any question of waiver, and in view of that admonition we cannot say that the jury did not obey it rather than follow the wrongful course of conduct suggested by counsel. We do not think that the rights of the defendant before the jury were prejudiced. Here again the court denied a motion for new trial and we think that its ruling upon this matter must here be upheld.

The judgment appealed from is affirmed.

Schottky, J., and McMurray, J. pro tem.,* concurred.

A petition for a rehearing was denied August 7, 1956, and appellant's petition for a hearing by the Supreme Court was denied September 13, 1956. Schauer, J., and Spence, J., were of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.