[Civ. No. 18077.   First Dist., Div. One.   Mar. 23, 1959.]

CARLTON A. STEINER, Respondent, v. BEULAH
LAWRENCE PARKER, Appellant.

Oswald G. Ingold and Henry Poppic for Appellant.

Sidney Rudy for Respondent.

BRAY, J.—Defendant appeals from a judgment in favor of plaintiff in the sum of $4,278 for architectural services rendered.

## QUESTIONS PRESENTED

1. Sufficiency of evidence.
2. Statute of limitations.

### 1. *Evidence.*

■ Plaintiff was a licensed architect. In April, 1953, Mr. Parker, defendant's husband, visited plaintiff's office and discussed the improvement of Berkeley property owned by Parker and defendant in joint tenancy. Thereafter plaintiff worked on designs for a medical building, a women's dormitory and an apartment house. Subsequently plaintiff and Mr. Parker had "perhaps a dozen" conferences concerning the architectural work at which defendant was present at "perhaps half of them" and participated in the discussions.

December 5, 1953, Parker died, at which time defendant requested plaintiff to cease the work. About a week later she requested him to continue with the plans on the apartment house. In mid-January, 1954, defendant ordered plaintiff to stop. At this time the work was in the final preliminary drawing stage of the apartment house project. On May 18, 1953, plaintiff sent Mr. and Mrs. Parker a letter outlining the architectural services to be rendered and the fees to be paid. If the work proceeded to completion of preliminary drawings, the fee would be one-fifth of 8 per cent of the reasonable estimated cost of construction, 75 per cent of the fee to be paid at the time the contract was awarded. If stopped prior to completion of the drawings, payment would be based upon office costs plus overhead.

The work on the medical building plans stopped at Parker's request in mid-August, 1953, on the dormitory plans in November, and on the apartment building either on December 6, as contended by defendant, or in mid-January, 1954, as testified by plaintiff (either date is within the statutory period). The action was brought November 16, 1955. Defendant contends that the services rendered for the medical building

and dormitory plans terminated more than two years prior to filing suit and hence were barred by section 339, subdivision (1), Code of Civil Procedure (two years).

Plaintiff testified that he understood that no bill was to be sent until his work was completed. Plaintiff testified to the reasonable costs and overhead in the amount allowed by the court. Defendant denied that she asked plaintiff to continue with the plans after her husband's death. She stated that on December 15 or 16, shortly after her husband's death, plaintiff called at her home and when she asked him how much she owed him he replied that she did not owe him anything. Defendant's main attack on the sufficiency of the evidence to support the court's finding is based upon this testimony of defendant, which defendant claims was not denied by plaintiff. However, plaintiff, when asked whether he told defendant that she did not owe him anything, replied, "No; I don't remember that. Q. You don't remember that? A. No." The trial court properly could, and obviously did, treat this as a denial. The property was in joint tenancy. The husband, as is common, acted as manager. Originally he contacted plaintiff, but thereafter both husband and wife participated in discussions about the projects with plaintiff. The letter was addressed to both defendant and her husband. The evidence amply shows that plaintiff rendered services at the direct request of defendant and, or through, her husband acting as her agent. (Agency of a husband to represent his wife may be shown by circumstantial evidence. *Brown* v. *Oxtoby* (1941), 45 Cal.App.2d 702, 708 [114 P.2d 622].)

2. *Statute of limitations.*

The question of whether the statute of limitations applies depends upon whether the work to be performed by plaintiff was severable or whether it constituted one complete contract. *Johnstone* v. *E. & J. Mfg. Co.* (1941), 45 Cal.App.2d 586, 587 [114 P.2d 658], points out that the statute begins to run from the time the last service is rendered "Where services are rendered over a period of time under an express or implied agreement that they shall be paid for at the termination thereof . . ." (P. 588.) (See also *Mendoza* v. *Gomes* (1956), 143 Cal.App.2d 172 [299 P.2d 707].) Plaintiff testified that he was not to be paid until the termination of his services. The action was for the reasonable value of his services. He was employed to design a suitable building and only one design would be used eventually. (It was never con-

templated that plans for more than one building would be completed.) For one reason or another, as work on the plans progressed, the Parkers changed their minds as to the type of building they desired. Plaintiff was instructed to stop work on one type of building and commence on another. However, the object of the agreement was for plaintiff to ultimately perform all architectural services necessary to the construction of whatever was erected on the property. There is no evidence to indicate either party intended a series of agreements or that negotiations for payment were carried on as each building plan was commenced or terminated.

Defendant relies on a payment provision in the May 18th letter stating that if the work was stopped prior to the completion of any step outlined in the method of payment, payment would be based on office costs plus overhead. Because the work on the three buildings was allegedly stopped prior to the completion of the first step, defendant contends payment thereupon became due as each project was stopped based upon cost and overhead.

Defendant relies upon the Johnstone case, *supra*, as in point. There the court held (p. 588) : "The contract was not entire. The plaintiff having given his advice and assistance relative to a particular matter, the services were complete and were not dependent upon those previously rendered or subsequently furnished. Neither can it be implied from the evidence that it was the intention of the parties that the services were not to be paid for until all advice and assistance to defendant had been furnished." In our case, the services were part of an entire contract, the furnishing of plans for such type of building as the Parkers might finally determine to be built, and the drawings of the first two types of buildings were merely preliminary to that determination. "[D]ue to difficulty of financing," (language of the letter) plaintiff's services were intended to be paid for after a contract for the construction of the building ultimately selected was let.

█ The following clauses in the letter are ambiguous: "If the job is stopped at any one of the above steps [this refers to (a) completion of preliminary drawings, (b) half completion of working drawings and specifications, (c) completion and acceptance of working drawings and specifications] payment shall be made as stated" in (a), (b) or (c). "In the event that progress is stopped between any one of these steps, the payment shall be based upon office costs plus overhead." Plaintiff contends that these clauses referred to

the method of computing fees, not to the time of payment, and that moreover, the preliminary drawings of the building ultimately to be selected had never been made, even though there were preliminary drawings of the medical and dormitory buildings. Thus, when stopped from further work on the plans of these two buildings, they being merely a part of the general plan, the job was not stopped at or between any of the designated steps. The letter contains no mention of the particular types of buildings to be planned. Hence, the change from one type to another did not constitute a "step."

In view of plaintiff's testimony that Parker had agreed that plaintiff was not to bill them until his work was completely terminated, and a reading of the entire letter, the construction placed on the letter by the court is a reasonable one.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.