Filed 12/9/21  Brown White & Osborn v. Wyatt's Paint and Body Shop CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| BROWN WHITE & OSBORN LLP, | |
| Plaintiff and Appellant, | E075398 |
| v. | (Super.Ct.No. CIVDS1707684) |
| WYATT'S PAINT AND BODY SHOP, INC., | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  John M. Tomberlin, Judge.  Affirmed.

Brown White & Osborn and Kenneth P. White for Plaintiff and Appellant.

Knez Law Group, Fred J. Knez and Matthew J. Knez for Defendant and Respondent.

Plaintiff and appellant Brown White & Osborn LLP (the Firm) sued defendant and respondent Wyatt's Paint and Body Shop (the Shop) for breach of contract and account stated.  The trial court held a bench trial on the bifurcated issue of whether the

1

lawsuit was filed beyond the statute of limitations. The trial court concluded the lawsuit was time-barred and entered judgment in favor of the Shop. The Firm contends the lawsuit was filed within the statute of limitations. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY[1]

The Shop was owned by Randy and Kris Wyatt, who were the parents of Elvis Wyatt (Elvis).[2] In September 2009, the Shop sponsored a car show. During the car show, Elvis allegedly shot and killed Shaun Wooten. Elvis was charged in connection with Wooten's killing.

In May 2010, the Shop retained the Firm to represent it in a wrongful death case related to the shooting (*Wooten et al. v. Wyatt's Paint and Body Shop, Inc. et al.*, San Bernardino County Superior Court case No. CIVDS1004747 [the *Wooten* case]). In July 2010, the Firm was retained to additionally represent Elvis in the *Wooten* case, with the Shop paying the Firm for representing Elvis. In September 2010, the Firm was

_____

[1] In the trial court, the trial attorneys "stipulate[d] as to the admissibility of all exhibits and executed a Joint Exhibit List reflecting the stipulation." The parties waived a court reporter in the trial court. In the parties' briefs at this court, they cite to the trial exhibits; however, the trial exhibits are not included in the record on appeal, and neither party had the trial exhibits transmitted to this court. (Cal. Rules of Court, rule 8.224(a); *VL Systems, Inc. v. Unisen, Inc.* (2007) 152 Cal.App.4th 708, 711, fn. 2.) Nor does the record include an exhibit list, which would permit this court to identify and then request certain exhibits. (Cal. Rules of Court, rule 8.224(d); see also *Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502 [it is appellant's burden to provide an adequate record].) As a result, our statement of the facts relies largely upon the trial briefs and the few declarations and exhibits that were submitted in relation to the motions in limine. (See *State Comp. Ins. Fund v. WallDesign Inc.* (2011) 199 Cal.App.4th 1525, 1528, fn. 1 ["if it is not in the record, it did not happen"].)

[2] We use Elvis's first name for the sake of clarity; no disrespect is intended.

retained to represent Elvis in a second civil lawsuit related to the shooting (*Valencia et al v. Wyatt's Paint and Body Shop, Inc. et al*, San Bernardino County Superior Court case No. CIVDS1010953 [the *Valencia* case]), with the Shop agreeing to pay for the Firm's representation of Elvis.

Insurance defense counsel was the primary representative for the Shop in both cases. The Firm's role was to protect Elvis from incriminating himself "without unduly prejudicing himself or [the Shop] in the civil litigation."

Per the retainer agreements, the Firm would send the Shop monthly billing statements. On August 29, 2012, the Shop questioned the Firm's bills. In particular, the Shop questioned "why it was being held responsible for the invoices rather than the insurance carrier." On November 29, 2012, the Firm sent the Shop a letter "indicating that the [Shop's] bills remain unpaid and that if payment of $15,000 was not made before December 15, 2012, that [the Firm] would substitute out of the case[s]."

The Firm substituted out of both cases on December 14, 2012. On January 28, 2013, the Firm drafted a letter about the Shop's refusal to pay the Firm's fees in the *Valencia* case. The letter reflected that the Shop last paid the Firm on December 2, 2010, and that $8,858.42 was owed to the Firm for work done in the *Valencia* case. The letter reads, "Despite our repeated discussions regarding your payment obligations, you have refused to pay the amount owed, you have not proposed a payment plan, or have you offered any lesser amount." The letter reflected the Firm would be initiating a collections action and that the Firm was "in the process of drafting a complaint against [the Shop], which [it] will file without further notice." The letter indicated that the Firm

3

intended to send the letter via certified mail; the certified mail tracking number was included in the letter.

As of March 25, 2013, the Firm was sending the Shop "invoices for interest-only on an 'overdue balance.'" On May 31, 2013, the Shop asserted that the Firm's invoices included charges for services that were not requested or authorized. Through January 2017, the Firm continued sending the Shop invoices with accrued interest.

On April 20, 2017, the Firm filed its lawsuit against the Shop seeking $50,947.59[3]. In the Shop's answer, it asserted the Firm's claims were barred by the statute of limitations. (Code Civ. Proc., § 337.)[4] In the Shop's amended trial brief, it contended the four-year statute of limitations began to run on December 14, 2012, when the Firm withdrew from the cases due to the Shop allegedly breaching the agreements by not paying the Firm. Therefore, the Shop asserted, "The statute of limitations ran on December 14, 2016 before the complaint was filed in this case."

The Firm asserted the statute of limitations began to run on May 31, 2013, when the Shop asserted that the Firm's invoices included unauthorized charges. The Firm contended that, until May 31, 2013, the Shop had questioned the invoices, but had not refused to pay and thus, the Shop's alleged breach occurred on May 31, 2013. As to the January 28, 2013, letter concerning the Shop's refusal to pay, the Firm explained that it

---

[3] We infer that the amount of $50,947.59 was the total due for both the *Valencia* and *Wooten* cases.

[4] All subsequent statutory references will be to the Code of Civil Procedure unless otherwise indicated.

was an "unsigned draft Notice[ ] of [the] Right to Arbitrate . . . , which contain[s] the language 'you have refused to pay the amount owed.' [Citation.] But [that] draft letter[] [was] prepared by a paralegal and there is no evidence [it] was ever sent."

## DISCUSSION

A.     BREACH OF CONTRACT

The Firm contends the trial court erred by concluding that the breach of contract cause of action, filed on April 20, 2017, was time-barred by the four-year statute of limitations (§ 337, subd. (a)).

Because the relevant facts are undisputed, we apply the de novo standard of review. (*International Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606, 611.) "It has long been established a cause of action based upon a breach of contract accrues at the time of the breach. [Citation.] In the case of a personal performance contract, [a] defendant breaches his obligation to pay at the time plaintiff completes performance of the requested act." (*E.O.C. Ord, Inc. v. Kovakovich* (1988) 200 Cal.App.3d 1194, 1203 see also *Brooks v. Van Winkle* (1958) 161 Cal.App.2d 734, 743; see also *Mitchell v. Towne* (1939) 31 Cal.App.2d 259, 263; see also *Platnauer v. Forni* (1933) 131 Cal.App. 393, 400; see also *Steiner v. Parker* (1959) 169 Cal.App.2d 22, 25; see also *Johnstone v. E & J Mfg. Co.* (1941) 45 Cal.App.2d 586, 587-588.) Thus, "[a]n attorney's right to compensation accrues at the time his work has been finished and the statute of limitations begins to run as of that time." (*Atchison v. Hulse* (1930) 107 Cal.App. 640, 645; see also *Osborn v. Hopkins* (1911) 160 Cal. 501, 507 ["the

5

attorney's right of action for services therein accrues with the completion of his services therein"].)

The Firm withdrew from the cases on December 14, 2012. When the Firm ceased representing the Shop, while the Shop's account was approximately two years past due, the breach occurred. Thus, the statute of limitations commenced running when the Firm withdrew from representing the Shop on December 14, 2012. Accordingly, the breach of contract cause of action, filed on April 20, 2017, is time-barred.

The Firm contends it was not required to treat the Shop's lack of payment as a breach of the agreements. The Firm asserts it waited until May 31, 2013, when the Shop wrote a letter alleging the fees were unauthorized, to treat the Shop as having breached the agreements.[5] In support of its argument, the Firm relies upon the wrongful termination case of *Romano v. Rockwell International, Inc.* (1996) 14 Cal.4th 479 (*Romano*).

In *Romano*, the intermediate appellate court "concluded that the statute of limitations begins to run on all the alleged causes of action on the date employment actually is terminated, but [Rockwell, the employer,] assert[ed], primarily on the basis of related federal authority, that the statute of limitations should run from the date the

---

[5] In the trial court and this court, the Firm asserted time began accruing on "April 31, 2013"; however, April does not have 31 days. (Evid. Code, § 452, subd. (g) [judicial notice of facts of common knowledge].) The Shop's letter, regarding the Firm's fees, is dated May 31, 2013. Therefore, we infer that the Firm has made typographical errors and meant to assert that time began accruing on May 31, 2013.

6

employee is informed unequivocally that his or her employment will be terminated." (*Id.* at p. 484.) The Supreme Court agreed with the Court of Appeal. (*Ibid.*)

In *Romano*, on December 6, 1988, William P. Romano, the employee, was informed by his immediate supervisor, Gary Collins, that Collins's supervisor "desired that Romano's employment be terminated." (*Romano*, *supra*, 14 Cal.4th at p. 484.) Romano continued working for Rockwell until May 31, 1991. (*Id.* at p. 485.) On December 9, 1991, Romano sued Rockwell. The lawsuit included a breach of implied contract cause of action. (*Ibid.*) Rockwell sought summary judgment on the basis that the two-year statute of limitations for an action on an implied contract (§ 339) barred the lawsuit because time began accruing on December 6, 1988, when Romano was notified that his employment would be terminated. (*Id.* at pp. 485-486.)

In discussing anticipatory breach, i.e., repudiation of the contract prior to the time for performance, the Supreme Court explained, "[I]n the event the plaintiff disregards the repudiation, the statute of limitations does not begin to run until the time set by the contract for performance. [Citation.] . . . 'For the purpose of determining when the period of limitation begins to run, the defendant's non-performance at the day specified may be regarded as a breach of duty as well as the anticipatory repudiation. The plaintiff should not be penalized for leaving to the defendant an opportunity to retract his wrongful repudiation; and he would be so penalized if the statutory period of limitation is held to begin to run against him immediately.'

"Indeed, whether the breach is anticipatory or not, when there are ongoing contractual obligations the plaintiff may elect to rely on the contract despite a breach,

and the statute of limitations does not begin to run until the plaintiff has elected to treat the breach as terminating the contract. [Citation.] In the context of successive breaches of a continuing contractual obligation, we have explained: ' "In such a contract, where the parties did not mutually abandon or rescind it upon a breach or successive breaches, the injured party could wait until the time arrived for a complete performance by the other party and then bring an action for damages for such breaches. [Citation.] Respondent was not bound to treat the contract as abandoned on the first breach of it, or on any particular breach, but had his election to still rely on it, and the statute of limitations could not begin to run until it had made its election." ' " (*Romano*, *supra*, 14 Cal.4th at pp. 489-490.)

Under the State Bar's Rules of Professional Conduct, an attorney may withdraw from representing a client if "the client breaches a material term of an agreement with, or obligation[ to,] the lawyer relating to the representation, and the lawyer has given the client a reasonable warning after the breach that the lawyer will withdraw unless the client fulfills the agreement or performs the obligation." (Rules Prof. Conduct, rule 1.16(b)(5).)

In the instant case, the Shop ceased paying the firm in December 2010. Nevertheless, for two years, the Firm elected to not treat the non-payment as a breach and continued working on the two cases. Then, on November 29, 2012, the Firm sent the Shop a letter "indicating that the [Shop's] bills remain unpaid and that if payment of $15,000 was not made before December 15, 2012, that [the Firm] would substitute out of the case[s]." On December 14, 2012, the Firm withdrew from the cases.

At that point, the Firm elected to treat the non-payment as a breach because, the Shop's breach was a required element for the Firm's withdrawal from representing the Shop and Elvis.  (Rules Prof. Conduct, rule 1.16(b)(5).)  Therefore, the Firm's assertion that it waited until May 31, 2013, when the Shop alleged the fees were unauthorized, to elect to treat the Shop as breaching the agreements is contrary to the record.

B.      ACCOUNT STATED

On appeal, the Firm did not present a separate argument pertaining to the account stated cause of action, which also has a four-year statute of limitations (§ 337, subd. (b)).  Accordingly, we will not separately analyze the ruling as it pertains to the account stated cause of action.  (See *Richard v. Richard* (1954) 123 Cal.App.2d 900, 902 ["appellant has the burden of showing error"].)

**DISPOSITION**

The judgment is affirmed.  Respondent is awarded its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
                                                                                        J.

We concur:


McKINSTER _____
                        Acting P. J.


SLOUGH _____
                        J.

9